[Civ. No. 3283.   Third Appellate District.—May 23, 1927.]

C. W. BINGHAM, Appellant, v. E. E. DOUGLASS et al., as Members of the Board of Trustees of the Manteca Grammar School District, etc., Respondents.

[1] SCHOOL LAW — LOCATION OF SCHOOLHOUSES — MASS MEETINGS OF ELECTORS — DUTY OF BOARD OF TRUSTEES. — Section 1611 of the Political Code authorizes and requires boards of trustees in school districts, not including districts having city boards of education, to call mass meetings of the qualified electors for determining or changing the location of a schoolhouse.

[2] ID. — CHANGE OF SCHOOL SITE — CHANGING LOCATION OF SCHOOL-HOUSE — VOTES OF ELECTORS — SECTION 1611, POLITICAL CODE.— Under section 1611 of the Political Code, a majority vote of electors of a school district at a mass meeting is sufficient to pass a resolution instructing the trustees to change a school site, a two-thirds vote being required only in favor of a resolution changing the location of a schoolhouse.

[3] ID. — VOTE OF ELECTORS CHANGING SCHOOL SITE — INSUFFICIENT AS BASIS FOR INSTRUCTION TO TRUSTEES TO CHANGE SITE PREVI-OUSLY SELECTED — INJUNCTION. — A vote of electors of a school district at a mass meeting, under section 1611 of the Political Code, that a site chosen by the board of trustees for a school be changed does not amount to an instruction to the board as to the site to be purchased so as to authorize an injunction to restrain the purchase of a site which the trustees had previously selected.

(1) 35 Cyc., p. 937, n. 38.   (2) 35 Cyc., p. 938, n. 41.   (3) 35 Cyc., p. 939, n. 52.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Louttit, Stewart & Louttit for Appellant.

Daniel V. Marceau and R. C. Pardoe for Respondents.

PLUMMER, J.—By this action the plaintiff sought an order of the superior court restraining and enjoining the

1.  See 23 Cal. Jur. 97.

board of trustees of the Manteca grammar school district from purchasing a certain site mentioned in the complaint and also to prevent the delivery of a certain warrant, as a part of the purchase price thereof. The demurrer of the defendants to the complaint was sustained and the plaintiff declining to amend, judgment of dismissal was entered. From this judgment the plaintiff appeals.

After the formal parts of the complaint, not necessary to be set forth herein, it is alleged that on or about the sixteenth day of March, 1925, after proper proceedings taken and had therefor, an election was held authorizing the issue of bonds in the sum of $60,000 for the purpose of raising money for purchasing school lots, etc.; that after the sale of said bonds and the receipt of the money therefor, and the deposit of the same with the county treasurer of the county of San Joaquin, the board of trustees, on or about the twenty-fifth day of March, 1925, at a meeting of the board of trustees of said Manteca grammar school district, at which meeting all the members thereof were present, and of which meeting due notice had been given, there was entered on the minutes of said meeting the following statement, to wit: "After some discussion as to a site, the one known as the Spreckels site was chosen as the place to erect the new building." The complaint then alleges that thereafter and on the eleventh day of May, 1925, a petition was filed with the board of trustees of said district signed by 535 persons residing in the said school district, more than 300 of whom were heads of families; that there were not in said district at said time more than 500 heads of families. The petition was in the following words: "The undersigned, being the heads of families and the majority of the heads of families in said district, hereby petition the board of trustees of said school district to call a meeting of the qualified electors of said district for determining the location of the new schoolhouse for the construction of which bonds have heretofore been voted, and said board is hereby requested to give the notice or notices of such meetings as required by law." That on the said eleventh day of May, 1925, the board of trustees of the Manteca grammar school district adopted the following resolution: "Be it Resolved that this board do call a meeting in the Manteca School auditorium, on Monday, May 25, at 8 o'clock p. m., for the purpose of considering

the change of the site already selected by the trustees.'' Notice of this meeting was given by posting the following: ''Notice of Mass Meeting. Notice is hereby given that a mass meeting of the electors of the Manteca grammar school district will be held at the Manteca School auditorium on Monday evening, May 25, 1925, at 8 o'clock p. m., for the purpose of considering the change of the site of the proposed new school. No other business will be transacted at this meeting.'' [Signed by the board of trustees.]

The board of trustees had not entered into any contract for the purchase of the site referred to, called the ''Spreckels site.'' Thereafter, and on or about the eleventh day of June, 1925, the board of trustees of the said Manteca grammar school district drew a warrant in favor of the Spreckels Sugar Company, a corporation, in the sum of $3,638.40 in payment of 4.54 acres of land for a school site, and that plaintiff is informed and believes, and therefore alleges, that the 4.54 acres of land proposed to be purchased is the same tract of land hereinbefore described as the Spreckels site. It is further alleged that unless restrained, the defendants will deliver said warrant to the said Spreckels Company.

[1] Section 1611 of the Political Code authorizes and requires boards of trustees in school districts, not including districts having city boards of education, to call mass meetings of the qualified electors for determining or changing the location of a schoolhouse. The procedure to be followed in such mass meetings is specifically mentioned. After setting forth the necessary procedure in assembling such mass meetings, the section specifies: ''A meeting so called shall be competent to instruct the board of trustees: 1. In regard to the location or change of location of the schoolhouses or the use of the same for other than school purposes; 2. In regard to the sale and purchase of school sites; 3. In regard to prosecuting, settling or compromising any litigation,'' etc., and other matters not involved in this proceeding; the section concluding with the following proviso, ''provided that the vote in favor of changing the location of the schoolhouse be two-thirds of all the electors voting at said meeting upon the proposition to change the location.''

At the mass meeting of the electors of said district called as aforesaid, the following question was voted upon: ''Shall

the site chosen by the trustees known as the Spreckels site be changed?" 133 voted affirmatively and 125 negatively.

[2] The appellant, basing his argument upon the affirmative vote of 133 as against the negative vote of 125, calls our attention to the following cases, from which it is concluded that the court erred in sustaining the defendants' demurrer, the demurrer of the defendants having been sustained apparently on the theory that a two-thirds affirmative vote upon the proposition presented was necessary under the last proviso contained in section 1611 of the Political Code.

In the case of *Landers* v. *Van Aukin*, 77 Or. 479 [151 Pac. 712], the supreme court of Oregon had before it a somewhat similar question. It was there held that under the school laws of that state that by majority vote of any legally called school meeting a schoolhouse site may be selected, but that it required a two-thirds vote to order the removal of a schoolhouse.

In *Griebel* v. *School District No. 6*, 110 Kan. 317 [203 Pac. 718], the supreme court of Kansas held that it is competent for a school district to acquire more than one site and locate additional school buildings thereon, where more schools are necessary in the district, and the purchase of such additional sites may be authorized by a majority of those voting at a regularly called meeting.

. In the case of *Lumijarvi* v. *School District*, 112 Or. 344 [229 Pac. 684], under a somewhat similar statute, the supreme court of Oregon again held that in order to purchase a schoolhouse site only a majority vote of the electors in mass meeting assembled was necessary, but that it required a two-thirds vote of those present to order a removal of a schoolhouse.

In *Behrens* v. *Bechtel*, 131 Wash. 508 [230 Pac. 426], it was held that a majority vote of the electors in mass meeting assembled only was necessary to authorize or direct the purchase of a site.

In the case of *Jennings* v. *Clearwater School Dist.*, 65 Cal. App. 102 [223 Pac. 84], the court of appeals of this state held a majority vote of the electors present sufficient to adopt a resolution selecting a new school site and directing the erection of a schoolhouse thereon, where such reso-

lution does not call for the sale or abandonment of the school already maintained.

In answer to the construction placed upon the code provisions under consideration by the authorities above cited, the respondent calls our attention to the meaning of the word "location," some of which may be found in 38 C. J. 132, and argues the conclusion that the last proviso contained in section 1611 relative to the change of the location of the schoolhouse includes also a site selected by the board of school trustees. The section of the code, however, sets forth the meaning of the legislature in clear and unmistakable language. Subdivision 2, which we have quoted, specifies that the electors possess authority to instruct the board of trustees "in regard to the sale and purchase of school sites." In so far as this exercise of authority is conferred, the section makes no mention of the necessity of two-thirds of the electors at such mass meetings voting in favor of the resolution instructing the trustees in regard to the sale and purchase of school sites. It is only when the removal of the *schoolhouse* is to be had that two-thirds of the electors must vote affirmatively. There is a clear distinction between changing a location for a schoolhouse and the changing of the location of the schoolhouse. The proviso does not apply unless the latter condition is involved. It is urged by respondent that the requirement of a two-thirds affirmative vote could not be had or would not be required until the last nail is driven or the last paint brush is swung on the building designated as a schoolhouse, unless it also applies to a site selected for the schoolhouse. In this particular we think the argument begins at the wrong end of the proposition. The court would look to the intent of the legislature, which is to guard against an ill-considered sacrifice of public property, and that the application of the proviso would take place immediately upon any substantial portion of the schoolhouse being built upon or installed upon a site selected for the schoolhouse. That so long as the site remains the site, it is subject to change, as stated, in the cases which we have cited, but the very moment it begins to be the location of the schoolhouse, the provision, as we have said, intended to guard against ill-considered action and sacrifice of public property applies, and requires a two-thirds vote.

[3] Does this conclusion necessitate a reversal herein? We think not. As heretofore stated, section 1611 of the Political Code authorizes the electors in mass meeting assembled to instruct the board of directors. In the instant case there is no instruction as to the location of the school building. There is, of course, no instruction as to the change of the schoolhouse. The language of the proposition voted on was simply "Shall the site chosen by the trustees known as the Spreckels site be changed?" That is not an instruction as to where the schoolhouse is to be located. It amounts simply to a meaningless gesture. The board of school trustees of the Manteca school district were given no information whatever as to where the school should be placed, nor were they directed as to the site to be purchased. Whether the language of the proposition submitted to the voters was purposely worded so as to make it meaningless is of no moment now. The electors simply did not instruct the board of trustees as to the site to be purchased and that is conclusive in favor of the judgment of the trial court. In several of the cases which we have referred to, what is necessary to instruct as to the sites is set forth. In these instances the electors designated the sites to be purchased.

The judgment of the trial court is affirmed.

Thompson, J., *pro tem.,* and Finch, P. J., concurred.